Donald GRABER, Plaintiff
and Appellant,

v.

Sonia ENGSTROM, Defendant
and Appellee.

Civ. No. 10980.

Supreme Court of North Dakota.

March 19, 1986.

Donald Graber, pro se.

John R. Gregg, Bottineau, for defendant and appellee.

ERICKSTAD, Chief Justice.

Donald Graber, appearing pro se, appeals from a district court judgment which dismissed his action against Sonia Engstrom to recover damages for breach of a rental agreement and awarded Engstrom $480 in damages and $200 in partial attorney fees on her counterclaim against Graber. We affirm.

Engstrom entered into a written one-year lease agreement to rent Graber's mobile home effective August 15, 1981. According to Engstrom, while inspecting the mobile home before entering into the agreement, Graber promised to make certain repairs to the premises. Engstrom claimed that Graber promised to replace bathroom flooring, to replace a broken bedroom window, to fix a step and the skirting, to properly winterize the mobile home, and assured her that the residence would be liveable and suitable for occupancy. Graber denied making these promises. Although Graber made some of the repairs during the fall, other repairs were not made and problems ensued. The flooring around the toilet became moldy and unsanitary. Inadequate skirting around the mobile home allowed the entry of mice. The problems eventually became so severe that Engstrom vacated the premises during December 1981.

Graber brought this action against Engstrom seeking $2,570 in damages for Engstrom's breach of the lease agreement, for damages to the premises caused by Engstrom's negligence, and for mental anguish and "loss of reputation to rent said mobile home ..." Engstrom denied Graber's allegations and asserted that she was construc-

tively evicted from the mobile home. Engstrom counterclaimed, alleging that she was fraudulently induced to enter into the lease agreement by Graber's promises and that, although the mobile home was not suitable for occupancy, she continued to reside on the premises because of Graber's promises that repairs would be made. Engstrom requested that the lease be declared void and that she be awarded actual and punitive damages, attorney fees, or other appropriate relief.

Following a bench trial, the court ruled that Graber was not entitled to any relief. The trial court determined that Graber's failure to make the dwelling fit, habitable, and liveable constituted violations of both the leasing agreement and Graber's statutory obligation to maintain the premises in a fit and habitable condition; that Graber breached the rental agreement; that Engstrom by residing in the mobile home did not waive Graber's breach of the agreement; and that Engstrom was justified in terminating the lease and vacating the premises. The trial court awarded Engstrom treble damages in the amount of $480 for Graber's unreasonable withholding of her $160 security deposit, $200 for Engstrom's partial attorney fees, and costs of the suit.

The major issue raised by Graber in this appeal is whether the trial court erred in considering parol evidence of his promises to repair or renovate the mobile home. Graber asserts that the written lease placed the responsibility for maintaining the property upon Engstrom, and that his alleged oral promises conflict with the express language of the lease.

Section 47–16–13.1(1), N.D.C.C., among other things, requires a landlord of a residential dwelling unit to comply with the requirements of applicable building and housing codes materially affecting health and safety; to make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition; and to maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, and other facilities and

appliances supplied or required to be supplied by the landlord. *See also Mitchell v. Preusse*, 358 N.W.2d 511, 513 (N.D.1984). Section 47–16–13.1(4), N.D.C.C., however, allows the landlord and tenant of a single-family residence to agree in writing that the tenant perform the landlord's duties concerning specified repairs, maintenance tasks, alterations and remodeling if the transaction is entered into in good faith.

The lease agreement signed by the parties in this case provides in pertinent part:

"The party of the first part [Engstrom] understands that in renting said property, he must act as a reasonable and prudent person and any negligence on his part in maintaining said property, such as pluged [sic] sewer, frozen pipes, breakage and other damages, not due to normal wear and tear must be paid by himself."

The trial court ruled that this provision in the lease was ambiguous as to the specific responsibilities intended to be delegated to Engstrom, and allowed the admission of extrinsic evidence to aid in the interpretation of the agreement.

 The determination of whether a contract is ambiguous is a question of law for the court to decide. *Miller v. Schwartz*, 354 N.W.2d 685, 688 (N.D.1984). A contract is ambiguous when rational arguments can be made in support of contrary positions as to the meaning of the language in question. *Johnson v. Mineral Estate, Inc.*, 343 N.W.2d 778, 780 (N.D. 1984).

 We agree with the trial court that the above-quoted language in the lease agreement is ambiguous as to Engstrom's specific responsibilities. Although this provision generally places the responsibility for maintaining the property on Engstrom, it is vague as to the specific maintenance tasks intended to be delegated to Engstrom. The lease provision does not specifically mention repairs, alterations or remodeling, and imposes liability for damages only for Engstrom's acts of negligence in maintaining the property. The phrase "such as," used in the lease, is not a phrase of strict limitation, but is a phrase of general similitude indicating inclusion of other matters of the same kind which are not specifically enumerated. *See Donovan v. Anheuser-Busch, Inc.*, 666 F.2d 315, 327 (8th Cir.1981).

 In *Smith v. Michael Kurtz Construction Company*, 232 N.W.2d 35, 39 (N.D.1975), this court stated that "[i]t is not error to permit parol evidence to explain vague and ambiguous written contract provisions or to show representations made prior to the written contract which induced the party to sign the contract." Oral negotiations or agreements which preceded or accompanied the execution of a written contract may be employed to explain its uncertain expressions but not to contradict or nullify its express terms. *E.g., Paul W. Abbott, Inc. v. Axel Newman Heat. & Plumb. Co.*, 282 Minn. 493, 166 N.W.2d 323, 325 (1969); *Eggers v. Eggers*, 79 S.D. 233, 110 N.W.2d 339, 342 (1961). In addition, the parties' conduct subsequent to a contract's execution may be used to help determine the meaning of ambiguous language. *Stracka v. Peterson*, 377 N.W.2d 580, 583 (N.D.1985). Furthermore, an ambiguity in a contract is construed most strongly against the party who prepared it and presumably looked out for his best interests in the process. *Ray Co., Inc. v. Johnson*, 325 N.W.2d 250, 252 (N.D.1982).

 When the terms of a contract are ambiguous and reference must be made to extrinsic evidence, then those questions in regard to which extrinsic evidence is adduced are questions of fact which will not be reversed on appeal unless they are clearly erroneous. *Bismarck Realty Co. v. Folden*, 354 N.W.2d 636, 640 (N.D.1984). A finding of fact is clearly erroneous under Rule 52(a), N.D.R.Civ.P., when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Leno v. Ehli*, 339 N.W.2d 92, 96 (N.D.1983).

Engstrom introduced into evidence several letters she claimed to have written to Graber during the term of the lease complaining about the condition of the premises. An undated letter which Engstrom testified was mailed on August 15, 1981 at the beginning of the term of the lease, indicates that at the time she moved into the mobile home she expressed concerns about a broken board on the landing of the front steps, water in the front entry from a leaky roof, a broken bedroom window, a defective electrical fixture and globe, a clogged kitchen sink and leaky pipe, debris by the front door, and old pieces of linoleum nailed down on the bathroom floor. In a letter dated November 12, 1981, Engstrom referred to telephone conversations she had with Graber and again complained about the conditions of the mobile home, stating: "When my mother and I examined the trailer in July you stated that you would make repairs so that it would be in liveable condition. You specifically stated that you were putting new flooring in the bathroom."

In a letter to Graber dated December 18, 1981, shortly before vacating the premises, Engstrom stated:

"At the time I leased the trailer you said you would make the trailer in liveable condition. It was specifically stated that new flooring would be placed in the bathroom. Old pieces of torn linoleum nailed down with roofing nails is not new flooring. The flooring has not been replaced nor has anything been done about the condition of the skirting. As a result I have been over run with mice. I informed you of this problem in our telephone conversations of October 13th and December 3rd.

"As it is, the trailer is unlivable. You have failed to respond to my repeated requests to examine the problems and make repairs or to my offers to make repairs and deduct the costs from my rent. These problems are not due to negligence on my part."

Although he denied receiving these letters, rent checks which accompanied two of the letters were cashed by Graber. Evidence was also presented which, if believed, established that Graber, prior to the beginning of the lease term, worked on the entryway and roof of the mobile home. The evidence further indicates that during September 1981, Graber repaired the bedroom windows and the landing, and on December 19, 1981, he purchased carpeting for the bathroom.

■ In view of the evidence presented, the trial court as the trier of fact could properly infer not only that the specific repairs or maintenance tasks at issue were not intended by the parties to be the responsibility of Engstrom, but that the parties agreed that Graber would make those repairs in order to have the premises in a habitable and liveable condition by August 15, 1981, or within a reasonable time thereafter.

The trial court determined that the deficiencies in the rented premises and Graber's failure to correct them caused the dwelling to be uninhabitable. The trial court further determined that Graber thereby breached the rental agreement; that Engstrom, by continuing to reside on the premises, did not waive the breach; and that Engstrom was justified in terminating the lease and vacating the premises. These are findings of fact subject to Rule 52(a), N.D.R.Civ.P. [*Mitchell v. Preusse*, 358 N.W.2d 511, 513 (N.D.1984)], and on the record before us we cannot say that those findings are clearly erroneous.

■ Graber asserts that the district court, having determined that he did not act fraudulently, erred in awarding Engstrom treble damages under § 47–16–07.-1(3), N.D.C.C., because Engstrom in her counterclaim did not request return of her security deposit. We disagree. Engstrom's counterclaim, in addition to her prayer for actual and punitive damages, requested attorney fees and "such other and further relief as the Court deems necessary." We construe pleadings liberally so as to do substantial justice. *See Jablonsky v. Klemm*, 377 N.W.2d 560, 565 (N.D. 1985); Rule 8(f), N.D.R.Civ.P. Moreover, Rule 54(c), N.D.R.Civ.P., provides in part

that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." The trial court did not err in awarding Engstrom treble damages under § 47–16–07.1(3), N.D.C.C. *Cf. Schwarting v. Schwarting,* 354 N.W.2d 706, 710 (N.D. 1984).

Graber also summarily attacks numerous trial court rulings on his objections relating to the admission of documentary evidence and the examination of witnesses. Rule 611, N.D.R.Ev., gives the trial court wide discretion over the mode and order of interrogating witnesses and presenting evidence, and the trial court's rulings in that respect will not be disturbed on appeal unless the record establishes that the discretion was abused to the prejudice of the complainant. *See State v. Jenkins,* 326 N.W.2d 67, 70 (N.D.1982). In addition, Rule 103(a), N.D.R.Ev., provides that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, ..." Graber has failed to establish that any of the contested trial court rulings were erroneous or that they affected his substantial rights.

Engstrom asserts that Graber's appeal is frivolous, thereby justifying an award by this court of costs and attorney fees pursuant to Rule 38, N.D.R.App.P. We do not consider Graber's appeal to be frivolous, and accordingly deny Engstrom's request.

The judgment is affirmed.

GIERKE, VANDE WALLE, LEVINE and MESCHKE, JJ., concur.